# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OPTIMUM LAB SERVICES, LLC, COGENT ) <br> MEDICAL LABORATORY, LLC and ) <br> PEDIATRIC ALLERGY SOLUTIONS, LLC, ) <br> ) <br> Defendants. ) | Case No. |

## COMPLAINT

Plaintiff, Life Technologies Corporation ("Life Technologies"), for its Complaint against Optimum Lab Services, LLC ("Optimum"), Cogent Medical Laboratory, LLC ("Cogent"), and Pediatric Allergy Solutions, LLC ("Pediatric") ("Defendants" collectively), alleges and states as follows:

## PRELIMINARY STATEMENT

1. In order to secure access to scarce Covid-19 lab testing materials during the height of the pandemic, Defendants agreed to purchase certain guaranteed quantities of those materials from Life Technologies. Defendants immediately fell behind on their obligations but promised payment was forthcoming in order to ensure the continued shipment of products. After months of evolving excuses, finger pointing, and, likely, outright fraud, Defendants still have paid nothing of their outstanding balance of approximately $10,000,000 to Life Technologies. By this Complaint, Life Technologies charges Defendants with breach of contract (Count I), and, in the alternative, promissory estoppel (Count II), and/or unjust enrichment (Count III).

## PARTIES

2.     Life Technologies is a Delaware corporation with a principal place of business in Carlsbad, California.

3.     Optimum is a Wyoming limited liability company with a principal place of business in Tulsa County, Oklahoma. Its members are Pediatric and RRG Enterprises, LLC ("RRG"). Upon information and belief, RRG is an Oklahoma limited liability company, and its members include Robert Gates ("Gates") and his wife Rita Rodrigues ("Rodrigues"). Optimum is registered to do business in Oklahoma. Upon information and belief, Gates and Rodrigues are Oklahoma residents.

4.     Cogent is an Oklahoma limited liability company with a principal place of business at 2801 S 294th E Avenue, Broken Arrow, Oklahoma 74014. Upon information and belief, its members include Gates and Rodrigues.

5.     Pediatric is a Wyoming limited liability company with a principal place of business at 1361 Baltimore Pike, Chadds Ford, Pennsylvania 19317. Upon information and belief, its members include Michael Blundetto ("Blundetto") and Dr. Michael Parra ("Parra"). Pediatric is registered to do business in Oklahoma. The states of residency for Blundetto and Parra are presently unknown to Life Technologies.

## JURISDICTION AND VENUE

6.     This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. §1332, because Life Technologies is a citizen of Delaware and California, upon information and belief, none of the Defendants or their members are citizens of Delaware or California, and the amount in controversy in this matter exceeds $75,000, exclusive of interests and costs.

7. Venue is proper in this district based on 28 U.S.C. §1391(b)(1) & (2), because all Defendants "reside" in Oklahoma and a substantial part of the events or omissions giving rise to these claims took place in this district.

## FACTUAL BACKGROUND

8. Upon information and belief, Cogent, through Gates, and Pediatric, through Blundetto and Parra, collaborated beginning in April of 2020 to secure a five-year Government Supply Agreement (the "GSA") to provide Covid-19 testing to certain United States government agencies, including the Department of Veteran's Affairs.

9. Cogent owned or operated a high complexity, CLIO- and COLA-certified laboratory necessary to perform the GSA, so Pediatric needed Cogent's lab in submitting its bid.

10. Upon information and belief and as part of this business collaboration, Cogent and Pediatric contemplated the purchase of Cogent's assets by Optimum, which was owned by Pediatric (and, ergo, Blundetto and Parra) and a predecessor entity of RRG (and, ergo, Gates and Rodrigues) once they secured the GSA.

11. On or about August 14, 2020, Pediatric was awarded and issued the GSA to perform Covid-19 lab testing. (Exhibit "1").

12. The GSA specifically provided that pricing was to be "Current Cogent Medical Laboratory Modalities with Microbiology Billed Amounts for Commercial."

13. In order to perform the tests under the GSA, Cogent and Pediatric needed a steady supply of Covid-19 testing products and materials.

14. Gates contacted Life Technologies to discuss Cogent and Pediatric's need to purchase those Covid-19 testing products and materials.

15. Life Technologies informed Gates that there was tremendous demand in the market for those testing products and materials due to the Covid-19 pandemic.

16. However, Life Technologies offered to provide those products and materials to Cogent and Pediatric in exchange for Cogent agreeing to purchase a guaranteed quantity of those products and materials.

17. Cogent, on behalf of itself and Pediatric, was amenable to entering into such an agreement, which ensured access to the products and materials needed to conduct the Covid-19 tests that Cogent and Pediatric expected from the GSA.

18. On August 17, 2020, Gates informed Life Technologies that the GSA had been awarded to Pediatric and that Cogent was the approved lab for the subject testing.

19. Life Technologies provided Cogent and Pediatric with Proposed Terms for the Supply of Covid-19 related products. (Exhibit "2").

20. Those proposed terms required Cogent to submit a non-cancellable purchase order for the purchase of the products listed therein.

21. On or about August 25, 2020, Cogent, on behalf of itself and Pediatric, and at the specific instruction and request of Pediatric, issued Purchase Order Number C2020035, by which it agreed to the terms of the supply chain agreement for the sale of the Covid-19 testing products and materials. (Exhibit "3").

22. Cogent, on behalf of itself and Pediatric, and at the specific instruction and request of Pediatric, also signed a letter agreeing to Life Technologies' Proposed Terms for the Supply of Covid-19 related products (the "Supply Agreement") (Exhibit "4").

23. The term of the Supply Agreement was twelve (12) months.

24. Cogent began purchasing products from Life Technologies pursuant to the Purchase Order and Supply Agreement in order to fulfill anticipated Covid-19 tests ordered through the GSA.

25. Life Technologies issued invoices to Cogent for those purchases.

26. However, Cogent was not making timely payment of those invoices, causing Life Technologies to repeatedly follow-up with Cogent inquiring as to when payment would be made.

27. Gates was the primary point of contact for those communications. However, Blundetto and Parra were included and participated in both email and telephone conversations about the outstanding obligations.

28. Defendants repeatedly assured Life Technologies that the invoices would be paid as soon as they began receiving payments under the GSA and requested that Life Technologies continue to make the contracted shipments of products.

29. Although there were no conditions precedent to Defendants' obligations to pay Life Technologies (including receipt of payment under the GSA), Life Technologies deferred taking further action against Defendants in reasonable reliance on Defendants' misrepresentations that payment from the U.S. government was imminent.

30. On September 24, 2020, Blundetto, as President and CEO of Pediatric, sent an email to Life Technologies asking that all invoices be issued in the name of Optimum, not Cogent.

31. In his email, Blundetto assured Life Technologies that all past due invoices would be paid after this name change was made on the invoices.

32. Blundetto provided this assurance because the purchases by Cogent had all been at the specific instruction and request of Pediatric and Optimum was owned by Pediatric (and an entity controlled by Gates).

5

33. Gates also requested the switch from Cogent to Optimum and provided Life Technologies with his new "optimumlabservices" email address.

34. On October 1, 2020, Gates sent a letter to Life Technologies authorizing the change of the name on the invoices from Cogent to Optimum.

35. Life Technologies continued to provide products under the Supply Agreement in reliance on the representations of Gates, Blundetto, and Parra that payment would be made.

36. On October 21, 2020, Blundetto sent another email to Life Technologies indicating that Pediatric was "finalizing our asset purchase agreement and transfer [of Cogent] to Optimum" and that Pediatric planned "to address the outstanding balances shortly - takes time."

37. At some point in October 2020, the assets of Cogent were in fact purchased by Optimum.

38. Despite the sale of Cogent's assets to Optimum, orders continued to be placed with Life Technologies under the Supply Agreement.

39. On November 18, 2020, Cogent sent an email to Life Technologies again confirming that Cogent had changed its name to Optimum Lab Services, placed all of its equipment in Optimum's name, and needed all lab supplies to be in Optimum's name.

40. On November 23, 2020, Blundetto responded to an email from Life Technologies asking when the invoices would be paid, writing: "Yes, we are finalizing our asset purchase agreement to make all invoices and payments to Optimum Lab Services."

41. This was part of the ongoing effort by Pediatric, Optimum, and Cogent to convince Life Technologies to continue supplying products under the Supply Agreement.

42. In fact, Optimum's acquisition of Cogent's assets had closed in October, and Blundetto's statement that the asset purchase agreement was still being finalized was untrue and merely another pretext for avoiding payment and continuing to receive products under the Supply Agreement.

43. Despite the promises of Cogent, Optimum, and Pediatric, Life Technologies has not been paid for the products ordered by Defendants and a large balance remains on the account.

44. To date, Defendants have failed to pay Life Technologies the below invoices.

| Order # | Invoice Date | Due Date | Balance |
|---|---|---|---|
| 78306601 | 9/18/2020 | 10/18/2020 | $3,264.83 |
| 78316274 | 9/21/2020 | 10/21/2020 | $207,654.88 |
| 78323085 | 9/22/2020 | 10/22/2020 | $342,203.56 |
| 78344655 | 9/25/2020 | 10/25/2020 | $282,445.70 |
| 78347896 | 9/26/2020 | 10/26/2020 | $29,211.69 |
| 78353729 | 9/28/2020 | 10/28/2020 | $5,306.48 |
| 78372260 | 10/1/2020 | 10/31/2020 | $3,038.48 |
| 78384709 | 10/5/2020 | 11/4/2020 | $633,715.77 |
| 78385810 | 10/6/2020 | 11/5/2020 | $203,317.03 |
| 78385924 | 10/6/2020 | 11/5/2020 | $50,323.01 |
| 78385937 | 10/6/2020 | 11/5/2020 | $269,600.07 |
| 78386058 | 10/6/2020 | 11/5/2020 | $771.89 |
| 78386068 | 10/6/2020 | 11/5/2020 | $175,498.69 |
| 78386147 | 10/6/2020 | 11/5/2020 | $398,051.68 |
| 78417899 | 10/12/2020 | 11/11/2020 | $843,382.29 |
| 78425269 | 10/14/2020 | 11/13/2020 | $146,896.45 |
| 78437392 | 10/15/2020 | 11/14/2020 | $728.15 |
| 78450684 | 10/19/2020 | 11/18/2020 | $1,256,277.54 |
| 78460001 | 10/21/2020 | 11/20/2020 | $24,774.43 |
| 78460012 | 10/21/2020 | 11/20/2020 | $31,892.49 |
| 78460032 | 10/21/2020 | 11/20/2020 | $3,222.84 |
| 78477469 | 10/23/2020 | 11/22/2020 | $6,348.24 |
| 78553019 | 11/9/2020 | 12/9/2020 | $22,014.40 |
| 78560037 | 11/10/2020 | 12/10/2020 | $1,233,346.97 |
| 78561598 | 11/11/2020 | 12/11/2020 | $60,140.12 |
| 78588336 | 11/16/2020 | 12/16/2020 | $6,348.24 |

| | | | |
|---|---|---|---|
| 78595708 | 11/17/2020 | 12/17/2020 | $22,014.40 |
| 78603477 | 11/18/2020 | 12/18/2020 | $585.99 |
| 78603478 | 11/18/2020 | 12/18/2020 | $1,232,810.63 |
| 78616725 | 11/20/2020 | 12/20/2020 | $1,254,924.32 |
| 78625287 | 11/23/2020 | 12/23/2020 | $585.99 |
| 78625288 | 11/23/2020 | 12/23/2020 | $293.00 |
| 78631728 | 11/24/2020 | 12/24/2020 | $3,038.48 |
| 78645295 | 11/30/2020 | 12/30/2020 | $6,348.24 |
| 78659679 | 12/2/2020 | 1/1/2021 | $6,348.24 |
| 78710435 | 12/11/2020 | 1/10/2021 | $2,122.48 |
| 78784114 | 1/4/2021 | 2/3/2021 | $1,224,802.18 |

45. The outstanding amount of those invoices is $9,993,649.87.

46. Additionally, pursuant to the Terms and Conditions of Sale that governed the parties' relationship, Life Technologies is entitled to receive interest at the rate of 1.5% per month on each late payment as a "late-payment" charge.

47. The outstanding amount owed in late payment charges as of October 31, 2021, is $1,548,821.73.

## COUNT I
## BREACH OF CONTRACT

48. The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully at length.

49. An agreement between Life Technologies and Defendants was created when Defendants ordered Covid-19 testing-related products from Life Technologies, by which Life Technologies agreed to provide certain products to Defendants and Defendants agreed to pay for the same, which constituted a legally enforceable contract.

50. Defendants were obligated to pay Life Technologies for the products ordered and which were provided to Defendants by Life Technologies.

8

51. Despite Life Technologies' repeated demands, Defendants have failed and/or refused to satisfy their aforementioned delinquent balance.

52. Defendants' failure and/or refusal to satisfy the delinquent balance owed to Life Technologies constitutes a breach of contract.

53. Life Technologies has been harmed and damaged by Defendants' breach of contract.

## COUNT II
## PROMISSORY ESTOPPEL

54. The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully at length.

55. If no enforceable contract was formed between Life Technologies and one or more of the Defendants, then Life Technologies pleads this claim of promissory estoppel in the alternative.

56. Defendants repeatedly promised to satisfy the outstanding balance owed to Life Technologies in order to induce Life Technologies to continue making shipments of its products to Defendants under the Purchase Order and Supply Agreement.

57. In reasonable reliance on those promises, Life Technologies continued to ship its products to Defendants and deferred further collection actions.

58. As a result of Life Technologies' reasonable reliance on Defendants' promises, Life Technologies has been harmed and damaged as it has provided the above products but has not received payment for the same.

## COUNT III
## UNJUST ENRICHMENT

59. The preceding paragraphs of this Complaint are hereby incorporated by reference as though the same were set forth fully herein at length.

60. If no enforceable contract was formed between Life Technologies and one or more of the Defendants, then Life Technologies pleads this claim of unjust enrichment/quantum meruit in the alternative.

61. Defendants have taken possession of and retained the products purchased from Life Technologies.

62. Defendants have used the products purchased from Life Technologies.

63. Despite Life Technologies' repeated demands, Defendants have failed to pay Life Technologies for those products.

64. Defendants have had the benefit of the use of those products.

65. Defendants have been unjustly enriched by using Life Technologies' products without paying for the same.

66. Life Technologies has been harmed and damaged as it has provided the above products used by Defendants but has not received payment for the same.

WHEREFORE, Plaintiff requests that judgment be entered in its favor and against Defendants in an amount in excess of $75,000.00, plus continuing interest, costs, attorneys' fees, and any other relief which this Court deems appropriate.

Respectfully submitted,

/s/ *Greg A. Castro*
Greg A. Castro, OBA No. 11787
C. Eric Shephard, OBA No. 22299
FELLERS, SNIDER, BLANKENSHIP,
 BAILEY & TIPPENS, P.C.
100 North Broadway, Suite 1700
Oklahoma City, OK  73102-9211
Telephone:      (405) 232-0621
Facsimile:       (405) 232-9659
Email:             *gcastro@fellerssnider.com*
                       *eshephard@fellerssnider.com*

-and-

Scott R. Leah, Esquire, PA I.D. No. 57564
*Pro Hac Vice Pending*
TUCKER ARENSBERG, P.C.
1500 One PPG Place
Pittsburgh, Pennsylvania 15222
Telephone:      (412) 566-1212
Facsimile:       (412) 594-5619
E-mail:            sleah@tuckerlaw.com

#05971/876380